Good morning, Your Honors. Matt McGowan for the Appellant Bankruptcy Receivables Management, which I'll refer to as BRM. I'd like to, if I could, reserve one minute for rebuttal. You can. You'll have to watch the clock yourself. Thank you. I'll try and help you. This is a bankruptcy appeal involving BRM realizing upon its so-called in-rem rights, which survived and passed through the bankruptcy case unaffected by the debtor's Chapter 7 discharge. In virtually every secured consumer lending arrangement, the secured creditor loans on the dual condition that it have recourse against the debtors personally and a security interest in the collateral in the property. In this case, there was a purchase money security interest that was given. So at the outset of the relationship, you have rights against the debtor in personam, as the law says, and rights against the collateral in rem. That was the situation here. The debtors bought diamond rings. They bought gold necklaces, which had a value of about $5,600 when they were purchased. And they agreed that they would pay that money back personally, and they also agreed that the party who became BRM would have a security interest in that property. Can I ask you this? If post-discharge BRM wanted the jewelry back, could they get it? Yes, they could have, Judge. Okay. So what is the problem then? You have the right of repossession. So what is the issue then in terms of the in rem portion? How would you have enforced that? In other words, if all you wanted was repossession, so you aren't paying, you haven't met your payments, you stopped making the payments post-discharge, voluntary payments post-discharge, now we're going to take the jewelry back. That would be one method, Judge, of realizing upon your in rem rights. Right. Another method would be to do as they did here, which is to enter into an agreement, which was called a post-discharge. So that's what they called it, but the bankruptcy court and then BAP on a somewhat different theory said, wait a minute, you're basically doing a reaffirmation agreement. And 524C lays out all of these procedural protections for a debtor, and now you're turning around post-discharge and coming in and basically getting what is, in effect, a reaffirmation agreement. Well, I would respectfully disagree. Well, I know you do, but I'm trying to understand. I mean, that's clearly what the BAP thought and held that you were doing. And there was error on that point, Judge. Because? Because there's no question ever since the 1886 Supreme Court case of Long v. Bullard that in rem rights pass through the bankruptcy case unaffected. That's correct. One way you can realize upon those in rem rights is by repossession. Yes, exactly. What's that got to do with the personal liability of the debtor? What you're saying is post-discharge you can get them into a new agreement, which creates new financial liability as opposed to repossession rights. Yes. You've already told me post-discharge you still have the rights to get the in rem, to get the rem, to get the property. Yes. So where is the authority to now create a new financial obligation, which has just been discharged? Because what has been discharged, Judge, is the debtor's liability personally for the debt. Right. What is not discharged is the in rem rights. Right. You can realize upon your in rem rights in a number of different ways. That's what I'm trying to get clear where this argument is. That's what I've been wrestling with. I understand that you're seeking the jewelry. That's what you're saying, right? Well, that's what you want is the jewelry. That's the rem. At that point. To realize on the right of repossession means taking the thing. All right. And my understanding is that you don't want the thing. You want money. You want them to pay off the balance of the financial obligation, which is what they just got discharged in the bankruptcy. We did want the thing. We asked for the thing back, Judge. Yes. And they refused? They refused. So did you have any cause of action to bring against them? Absent no written agreement, but they had the property. What was the form of action that you could have filed to get the rem, and what was the form you think you could have sued to get it in? We could have brought a replevant action to get the rem back. They didn't want to give it back to us, Judge. They wanted to retain it. So what we had to do then, despite the fact we did try to enter into a reaffirmation agreement, this notion that we did something surreptitiously, it's just false. We proposed a reaffirmation agreement that was in perfect compliance with Section 524. If they had signed it as they said they were going to, it would have been filed with the bankruptcy court. It would have come under bankruptcy court scrutiny. We would have welcomed that. They blew us off. At that point, there's no agreement. They wanted to hold on to it. So what did we do? We said, listen, our in-rem rights survive. Our in-rem rights do, in fact, provide separate independent consideration for a new agreement, provided the consideration is the in-rem rights. So what is the difference between a pre-discharge and post-discharge agreement of the kind you described? Why is one a reaffirmation subject to the Bankruptcy Act and the subsequent one isn't? Because on a reaffirmation, you're reaffirming the debt. Yes. On what happened here, a post-discharge property retention agreement, the consideration is not the discharge debt. The consideration is you're surviving in-rem rights, which may vary. They may be different from, may be at a value that's different from the discharge debt. You may, for example, Judge, have a situation where the discharge debt is $10,000, but the in-rem rights, the fair value of the property is only $3,000. If we had entered into a post-discharge property retention agreement where our in-rem rights, fairly valued, were only $3,000 and we had proposed an agreement with them for $10,000, i.e., the amount of the discharge debt, that would have been a violation of the discharge injunction. This was not a violation of the discharge injunction because, as we showed by evidence, by testimony, the value of our in-rem rights exceeded the amount of the discharge debt. At that point, the debt is only discharged to the extent we can't pursue the debtors personally. It still remains to establish what the upper limit is that we can receive in realizing upon those in-rem rights. So of necessity here, there was an equivalence between the amount of the discharge debt and the amount specified in the PDPRA. But that doesn't mean at all that the consideration for the PDPRA was the discharge debt. It was not. It was the surviving in-rem rights. So then your argument is this whole new agreement based on the then value of the jewelry? I'm sorry. It's entirely based on our in-rem rights, Judge, yes. But I say you're based on your in-rem rights. So in-rem, the subject matter of the personal liability was the jewelry, okay? So it's clear that your right to the jewelry survived the discharge. They don't get to keep the thing. That's right. Even if they are no longer responsible for paying for it. That's right. They can post-discharge keep it as long as they pay for it. As long as they're paying for the fair value of the property at that point. And anybody looking at that PDPRA we put together, Judge, cannot presume that it is a disguised reaffirmation agreement. It was not. I understand. I partly understand. So now the cutoff date happens. And you're saying that if they had continued to make payments in accord with the original loan agreement, that if BRM thought that didn't reflect the value of the jewelry, they could have sued to repossess? No. What they could have done under a so-called Parker retention right, to the extent that it exists, is unfortunately in this circuit they could have continued to make payment. Right. But as lower courts have stated, and as this court can take this case as the opportunity to clarify, lower courts have presumed, and they may be correct, that you don't have a Parker retention right if you are in default of your obligations, if you're in monetary default. And here they were. So they had no Parker retention right here. I understand. But I'm trying to parse this. So assuming that they had continued to pay and met their Parker-level payments, which would have been measured by the original loan agreement, presumably, is that correct? Yes. Okay. So if they continued voluntarily to make those payments, then absent any new agreement, the personal liability is discharged, they could continue to pay BRM. And the risk to them was that if they missed a payment, notwithstanding they made all these payments, you could come back in and get the jewelry. Yes, we could. Even if they had taken it down on a $3,000 ring, they paid off 2,900. There's only 100, but they didn't make the final payment. You get to keep the 2,900 post-discharge stream of payments, and you get the jewelry back even though they failed to make a $100 payment. No, we would get the jewelry back, Judge, and we could then exercise the MRM rights by repossessing it as opposed to entering into a PDPRA. We could receive, by exercising those MRM rights, an amount up to the amount of the discharged debt. We couldn't take back a piece of collateral where there was only $5,000 left to be paid on it and sell it for $15,000 and keep the $10,000 difference. We couldn't. Although you get a discharge of the debt, the debt still remains for different purposes, including for establishing what the upper cap is, if you will, on the amount that you can receive in realizing upon your NRM rights. And the problem with Parker, Judge, the problem with Parker is... But this panel isn't in a position to overrule Parker. We recognize that, Judge, but this panel is in a position to do a number of meaningful things here. First of all, it can, as a threshold matter, clarify, as lower courts are striving to understand Parker, that you don't have a Parker retention right if you're in monetary default. And these debtors were in monetary default. So you don't have... One thing that is not clear to me is when you say monetary default, at the end of the bankruptcy, is it possible for the debtor then to pick up, from that point on, the payments that would have to be made in order to pay off the $3,000? If they had not made the payments during the pendency of the bankruptcy case, Judge, they would be in monetary default. And a fair outgrowth of Parker, as respectfully, erroneously as we think it is, a fair outgrowth of that erroneous decision is, nonetheless, that you don't have a retention right if you're in monetary default. And so in order to not be in monetary default, you have to have been making payments on that jewelry during the time of bankruptcy. Yes, Judge. Yes. And here they didn't. They acknowledged that they were in monetary default. They acknowledged that. The problem with Parker being extended into this context, into this setting, is that it will set aside an entire line of jurisprudence that has been set up, that has been established over the years, around the point, again, starting in Long v. Bullard, 1886, U.S. Supreme Court, that says, In rem rights pass for the bankruptcy case unaffected by the discharge. They are separate and apart. They have separate existence, separate and apart from the discharge debt. They can have independent consideration for a new agreement. The problem with saying that Parker allows you to have a retention right in this setting, in this context, is that it says that I have the right as a debtor to continue to retain that, to continue to make payments such that the in rem rights do not provide new or independent consideration. And to say that in rem rights don't provide new or independent consideration is to set aside an entire line of jurisprudence that says that they do. That's the problem with Parker being extended into this context. And you have a situation here, Judge, where there was a panel of this Court, and I know you can't reverse it, that gave an improvident construction to Section 522 of the Bankruptcy Code. And whenever you give a construction like that to a provision of a comprehensive integrated code, whenever thereafter there's another issue that is related to that point, that is an outgrowth of that point, that is a derivation of that point, you will almost of necessity have a bizarre result. And that would be the result here if Parker is imported into this context, into this setting. It would set aside that entire line of jurisprudence. Another point, Judge? Basically, aren't you asking us to set aside Parker as applied to this case? As applied to this context, as applied to this setting, yes. But you don't need to go that far, Judge. You can stop at the point where you say you don't have a Parker retention right, if one could ever be found to exist where the debtors are in monetary default as they were here. That's the simplest, that's the easiest way to address this issue. Another simple and easy way to address the issue is to note that the bankruptcy judge did not have jurisdiction to do what he did here. You can almost, reading between the lines, see the bankruptcy judge sort of throwing up his hands, not knowing how to deal with this issue because of the defective construct that is Parker. And so what the judge did at the end is he said, first of all, there needs to be a hearing about the valuation of the property. Because, as I pointed out earlier in discussion with Judge Fisher, if the value of the property exceeds the discharge debt, then you can have a PDPRA-like agreement that is up to the amount of the discharge debt. And the bankruptcy judge was on the right track on that point. He said, we need to value what the collateral is worth. And we presented evidence, we had testimony about the value of the collateral. Ultimately, he never concluded what the value of the property was. That alone is clear error. That alone is sufficient to warrant, at the very least, a remand. But then he went ahead and he said, I need to also discuss whether there's a possibility these debtors had a Parker retention right. And we said, whatever right there might be that could exist under Parker in that respect shouldn't be applied in this context. And furthermore, as a threshold matter, it doesn't apply here because the debtors were in monetary default. What did the judge do at the end? In a way, you can't blame him. He said, here's what I'm going to do. I'm going to create for these debtors out of a loan remaining cause of action for an alleged violation of the discharge injunction, for which, as this court has determined in the past, the only remedy is contempt. I'm going to apply out of a federal contempt action a state law right of rescission, a state law right of rescission. Well, the judge sort of lost his bearings. He sort of lost track of where he was, and he purported to create here a cause of action, a remedy that he had no jurisdiction over. Bankruptcy judges are Article I judges. It's been clearly established. Their jurisdiction is very circumscribed. It originates from three bases, arising in, arising under, or related to. It doesn't arise in a bankruptcy case because the conduct complained of here was conduct that took place not only after the bankruptcy case, but after the bankruptcy case had been closed for months. Why simply relate to? I mean, the whole subject of this is the underlying obligation that has just been discharged. Because related to jurisdiction, Judge, is a term of art which has been defined to say that it's related to only if it has some effect on the bankruptcy estate being administered. So under that term of art of related to, it cannot be related to. And in addition, it does not arise under the Bankruptcy Code because it arises under state law. If the bankruptcy judge had said that this was a violation of the discharge injunction, that would be one thing. But that's not what the bankruptcy judge said. He knew he was on the right track. He knew that the consideration for that PDPRA was the in rem rights. He knew that we couldn't be found to be in violation of the discharge injunction. He never found that we were in violation of the discharge injunction. If he had done so, he would have had continuing jurisdiction to do that. He didn't have continuing jurisdiction to create out of a federal cause of action for which the only remedy is contempt, a state law rescission right, state law, where the conduct, again, arose several months after the bankruptcy case had already been closed. I'd like to reserve two minutes of it, if I could, then, Judge. I'd like to ask a question. Sure. How do we talk about the Parker retention right? What do you see as being the Parker retention right under Parker? Well, that's a very good question, Judge. I think Parker can be more correctly viewed as saying that a debtor is excused from performing under Section 521.2 of the Bankruptcy Code. Section 521.2 of the Code says you shall specify an intention as to whether you're going to retain or surrender secured collateral in a Chapter 7 case, and then you shall perform it. Perform it from among limited options, reaffirmation, redemption, et cetera. A retain and keep current is not one of those options. So all Parker says, if you limit Parker to its facts, if you limit Parker to its context, is that a debtor is excused from performing anything here. And we've noted how the First Circuit in the Burr case, which was decided also in 1998 but after Parker, says the Parker rationale, which is based exclusively on a quote from language from the Bankruptcy Court in Massachusetts, Ogando, which was adopted foursquare by the Ninth Circuit, Maitin decision, which was in turn adopted foursquare in Parker, that that's circular reasoning. If you read the Burr case from the First Circuit, which has some later scholarly work on this issue, what you will find is that Parker's rationale is entirely circular. It's entirely circular. It's defective. Well, can we hold that? You can understand that in this case, Judge, and from that you can say you're going to quarantine Parker and you're not going to extend Parker even further and exacerbate what is an error already and extend it into a new setting, into a new context. That's what we're asking here. Well, you're kind of on the edge of some thin ice, it appears to me, essentially asking us to overrule Parker. And I just have trouble with the scope of what you're asking and whether that requires us to run contrary to an unbanked decision of this Court. And we're not asking that you overrule Parker. We are asking, Judge, that you limit Parker to its facts, limit it to its context, and don't extend it into a context where it would, if you did so, wipe out an entire line of existing jurisprudence. Okay. Thank you. Thank you. Good morning, Your Honors. John Roberts, appearing for the debtors. Your Honors, there were no reason that this agreement had to be entered into in the first place. Nobody has ever argued that the immigrant rights did not pass through the bankruptcy. The creditor always had the right to repossess the jewelry. Nobody has ever argued that they didn't. The problem is that if you get to the end of the bankruptcy and there has been no retention or no redemption or reaffirmation agreement, the creditor has a choice to make. Do they want the collateral or do they want money? And they can voluntarily take the money without ever giving up their interim rights. The only reason for this agreement was to get personal liability on the debtors, and that was not necessary. What is then the ñ what's your understanding of the Parker right and how it plays post? My understanding is that if the debtors are not in default, that they have the right to keep the collateral. They were in default at the time of the bankruptcy. That's correct, Your Honor, but that doesn't mean that they couldn't have cured that default. They cured the default by resuming payments. Did they go back and make the prior defaulted payments? No, they didn't. Okay, so your reading of Parker is that post-discharge, if they resume the monthly payments per the original ñ I believe that they have to do more than just resume the payments. I think they have to cure for making the missed payments. But they have to go back and make a lump sum catch-up, or they can just add that at the tail end of the payout? I haven't analyzed it that far, Your Honor. Parker didn't address that? No. All right, so if you were keeping us within the Parker rule instead of quarantining it, how would you construe that? In this case? Yeah. I would construe it that the debtors had rights that they may not have exercised yet, but those rights were still there. No, I'm saying how about the ñ oh, the debtors had rights. That's correct. Okay, but the debtors started to make payments, didn't they, post-discharge on it? Correct. But that was pursuant to the agreement not to cure the default. All right. So if under Parker what they had to do, it would have ñ Parker could mean they had to do one of two things. They had to cure the default and then start making payments, getting back on track, with no new agreement being entered into to forestall repossession. Or they could have resumed payments and then the payment stream would have been extended out. I think either one of those would have been a proper interpretation. Okay. And the creditor here needs to basically ask themselves, did they want the money or did they want the collateral? Correct. Okay, so that's now my next question. I asked counsel. He said that they could have brought a replevant action for the collateral for the jewelry. Absolutely. And that would have been brought in state court, presumably. I believe that they could. And would the debtor have any defenses in that? If they still refused to turn it over, no, they wouldn't. All right. But would they have any other defenses? No. In other words, could they argue ñ would they be litigating in the state court? They would be litigating in the state court only the possession of the collateral, not personal liability. And they would be ñ would they be litigating ñ would they wind up litigating anything having to do with whether they, in effect, had missed the payments? No. What I'm trying to get at is there's a law in this circuit that I'm familiar with that you don't want state courts coming back and litigating, relitigating, or litigating issues that were in the bankruptcy proceeding. No. Jan, I believe that the only issue that the court ñ the state court could have litigated after the bankruptcy was possession. Possession. Correct. All right. Now, if they had paid 50 percent and then defaulted, they then stopped making payments. What's your ñ what is your understanding of what, say, the ñ I don't know if this jewelry is an appreciating asset or not, but what was the ñ what is ñ what does the debtor ñ excuse me, the creditor in this case get? He gets the jewelry back and gets to keep the stream of payments, or what? They get to keep the stream of payments up to the value of the collateral. The value. And if they have not received sufficient payments to cover the collateral, then, yes, they could repossess the jewelry, sell it. If they sold it for more than it was still owed on the contract or the value, that would have to be turned over. It would be like a foreclosure on the house. So you agree with BRM's counsel on that part? That's correct. Okay. All right. Would there have been to litigate in the state court? Because they weren't entitled to possession, were they? No. There's no question that ñ If they had brought a reluctant action, there would have been no defense, would there? Correct. But it's our argument that the creditor voluntarily let them keep the collateral by accepting payments. And they've lost none of their rights in doing so. Why isn't that consideration, then, the fact that they had no defense in the state court action, so the agreement being, all right, you can keep the collateral, but you have to be paying what's still due on the debt? I believe that that can be done informally. But once you get the debtor to do personal liability on that, that's a discharge debt. And you can't revive that debt post-petition. I mean, the only way to do it is in bankruptcy court. Is that a new consideration? I don't believe it was a new consideration. That's the question, isn't it? I don't believe it was a new consideration. There's no showing that this creditor had any intention of repossession, repossessing the collateral. They wrote a letter, but they made no attempt to do it. Their push here was to get it back. Correct. Well, that was refused, right? I don't know whether it was refused or not. The debtors were not my clients at that time. It was not returned. Yeah. But whether they refused to return it or didn't understand the rights, I simply don't know. If there had been consideration, then it would have been all right then, even though the underlying collateral here was the subject of the prior bankruptcy. I'm not sure I understand your question. Well, let's suppose the dispute about whether they wanted or gave up the right of repossession. In other words, if there was new consideration, could they have post-discharge revived a personal liability debt that wound up making them make the same payments, basically, that they would have made under the ---- I don't believe so, Your Honor, because the debt was discharged. All right. But if there's new consideration in order for them to keep the jewelry, they really desperately wanted this jewelry. In fact, the jewelry had appreciated it, so they wanted to keep it. And they wanted basically to keep it under the Parker concept by just simply reviving the payment stream that they had gotten in difficulty with. Now they've been cleared out of all their debts, so now they're going to focus on this jewelry and they're going to pay for it. Is it your position, because the BAP seems to say as long as there's anything having to do with the pre-discharge, if it's at all in part and whole or in part the subject of the discharge, then it's all subject to 524C? I think that's the correct interpretation, Your Honor. So you're saying then as long as it's the same jewelry and as long as it's the same people and as long as they're making payments, by necessity, it's what was involved in the bankruptcy was a subject matter. Therefore, there's no agreement that can be entered into that's enforceable for personal liability. That's correct, Your Honor. And if you look at the pleadings all the way through, the appellants have kind of changed their theory because in their original brief in the BAP, they stated that they could retain the jewelry and pay the remaining balance on the discharge debt. So they're even acknowledging that this is based on the discharge debt. Now, here's something that bothered me about the BAP decision. They say that so long as it's in whole or in part related to the discharge debt, then it must comply with 524C. Well, that basically says there's no such thing as a reaffirmation kind of agreement post-discharge because you can't comply with 524C other than by doing it pre-discharge. On its face, there's no such thing. I would agree, Your Honor. Pardon? I would agree. That's been one of our basic arguments that if you get to the end of the bankruptcy and there's been no reaffirmation, the rights of the secured creditor are limited, and that is repossession or voluntarily working on the agreement with the debtor, which, again, they have lost none of the rights to do that. They always have the right to bring an action to recover the collateral. What if this property had appreciated is now worth $15,000, and the creditor says to Lopez, Well, now, we'll allow you to keep this jewelry, but you're going to have to pay us in cash or over a period of time $6,000. Now, would that be okay? No. Why not? Because now they are asking for more than was discharged in the bankruptcy. Right. But the property is worth more. But I don't believe that they have the right to take advantage of that appreciation except through a foreclosure action. But Lopez doesn't want to have turnover of the property through Republican, so the creditor is willing to say, All right, if you really want to keep this, we'll forego taking it back through Republican, but you have to pay us $6,000, which is a good deal for you. I don't believe that's acceptable, Your Honor, because it's still based on the discharged debt. No. The personal liability was discharged. No, it's a new agreement to pay $6,000. That has nothing to do with the debt at all. There's a Republican right. They can get back the jewelry. Lopez didn't want to give it back because it's worth a lot more now, and so they reached a new agreement. Why isn't that a new consideration that we'll give up our right to recover it through Republican? Well, I don't think that they have really given up their right. They always have that right. Yeah, but they're now giving it up in exchange for an agreement to pay $6,000. They are not giving up the right because if the debtor defaults on that, they still have the right that they had before entering into that new agreement. Plus, they have now got a potential new liability, and that's the personal liability of the debtors. It's my contention that when you're dealing with consumers, post-petition, then you have to be very, very careful in the way that you handle the situation. Well, I don't think anybody doubts that. Well, maybe BRM does, but it's clear that Congress enacted 524C and put these restrictions on reaffirmation agreements to prevent debtors from being essentially badgered or otherwise into essentially reaffirming debts and just end running the bankruptcy proceeding. That's why I asked about 524C-1, because 524 basically says all of those protections, that they have to be approved by the bankruptcy judge and there are all these disclosures that have to be made, on its face assumes this all takes place pre-discharge. So, therefore, that whole regime by the terms of the statute itself apply pre-discharge. Now you have a situation where, under Parker, the subject matter of the debt, the house or whatever it is, car, jewelry, you're saying, well, they can continue to hold on to it. They can forestall repossession by continuing to make the payments. Correct. Okay. But there's no personal liability on that. It's just they're exercising an in rem right. Now, Judge Hugg has postulated that, gee, the jewelry has gone up. So they could, let's suppose the hypothetical, as I understand it, is now appreciated at $15,000. Even if it had appreciated under Parker, they could continue to make the payments based on the lower evaluation and forestall replevant. Is that correct? Correct. Or theoretically go out and refinance the collateral now that it's worth so much more and pay the remaining debt. So they refinance it with somebody else. Correct. But now I can't refinance it with the same creditor. No. I don't believe that you can. Because now what's the policy of that? The policy is the protecting of the debtor from making unwise decisions. Just gone out and made a new. Yes. But, you know, the Watson case, I think, is a good example of the type of thing that would have to happen in order to enter into an agreement. And that is that you have certain protections there. In that case, they had sophisticated attorneys negotiating the agreement. Or if they go out and make a third party refinance? Probably not. Okay. But your rights are limited when you're dealing with the same parties postpetition. Okay. When is 524C and D applicable only prior to discharge? Correct, Your Honor. They're extinguished as an operation of law upon the entering of the entrance of the discharge. So there's nothing that the creditor could have done under those provisions to have blessed this transaction? That's correct, Your Honor. So we're now dealing with whether there is new consideration or not? That's the appellant's argument, is whether there was new consideration. And was that consideration sufficient to make this a new contract?
judges: Hug, Gibson (8th Cir.), Fisher